E-FILED
Tuesday, 02 June, 2026 02:49:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

RYAN F.,

    *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of
Social Security,

    *Defendant.*

Case No. 1:25-cv-01230-RLH

### ORDER & OPINION

Plaintiff Ryan F. ("Ryan") filed this suit to challenge an administrative law judge's finding that he was not disabled under the Social Security Act and thus ineligible for benefits. The parties have consented to final disposition of this case by a U.S. magistrate judge. (Doc. 7.) Because the ALJ's decision was supported by substantial evidence, the Court affirms.

### LEGAL STANDARD

#### I.    The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

**Step One.** Is the claimant currently engaged in substantial gainful activity?

**Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?

**Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?

**RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?

**Step Four.** Based on the claimant's RFC, can they perform their past work?

**Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

2

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, while the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Ryan

Ryan was born in 1988, (R. at 232[1]), and was awarded his high-school equivalency in May 2017, (R. at 45). He has worked as an assembler in an eyeglass factory, a cook in a restaurant, a janitor at a fitness center, a merchandise clerk at a grocery store, and a laborer for a landscaping company. (R. at 274.) On a function report that Ryan completed as part of his application process, he claimed that his difficulty with writing and reading comprehension prevents him from understanding and applying instructions "for most jobs." (R. at 278.) At the hearing before the ALJ, Ryan reiterated that he has difficulty comprehending people and that, as a result, he is "treated differently." (R. at 55.) He testified that he has been diagnosed with bipolar disorder, depression, and anxiety, and that he is prescribed medications for those conditions. (R. at 57.) Ryan emphasized that his medications allow him to function relatively well, but that they occasionally induce drowsiness. (R. at 57.)

### II.    Procedural History

Ryan filed two applications with the Social Security Administration in April 2022—one for disability insurance benefits, and the other for supplemental security income—alleging that he has been disabled since November 30, 2019. (R. at 35.) His applications were initially denied in December 2022 and denied upon reconsideration the following July. (R. at 35.) He then requested a hearing before an ALJ, (R. at 35),

---

[1] "R." refers to the Certified Administrative Record filed on August 5, 2025. (Doc. 5.) The page numbers cited in this Order refer to the black page numbers at the bottom right of each page of the transcript rather than the green page numbers generated automatically by CM/ECF at the top right.

which took place in December 2023, (R. at 51). Present at the hearing were Ryan, his attorney, and a vocational expert. (R. at 51.)

After the hearing, the ALJ issued a written opinion concluding that Ryan was not disabled and therefore not entitled to benefits. (R. at 46.) In response, Ryan sought review of the ALJ's decision with the Appeals Council, but his request was denied. (R. at 8.) After receiving an extension of time to file a civil action, (R. at 8), Ryan filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1). He filed his brief three months later, (Doc. 10), and the Commissioner responded, (Doc. 12).

## III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Ryan was disabled. At step one, he determined that Ryan has not engaged "in substantial gainful activity" since November 2019—the date Ryan alleged that he became disabled. (R. at 37.) At step two, the ALJ found that Ryan had two severe impairments: bipolar disorder and anxiety. (R. at 38.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 38–40.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Ryan] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Ryan] would be able to perform simple and routine tasks where the complexity of tasks is learned and performed by rote with few variables and little judgment. [Ryan] could have no interaction with the public and only occasional interaction with coworkers where interaction would be incidental to work performed.  [Ryan] would be able to work at a low stress job meaning no more than ordinary routine changes in the work setting or duties and would not require a strict production quota.

(R. at 40.) At step four, the ALJ found that Ryan was not able to perform any of his past relevant work. (R. at 44.) Finally, at step five, the ALJ concluded that there are a significant number of jobs in the national economy that Ryan could perform. (R. at 45.) Examples of those jobs included lab equipment cleaner and laminator. (R. at 45.) Based on the ALJ's conclusion at step five, he determined that Ryan is not disabled. (R. at 45–46.)

## DISCUSSION

Ryan makes two related arguments. First, he argues that the ALJ accepted—but failed to incorporate into the RFC assessment—Ryan's testimony about the side effects of his medication. But the argument rests on a faulty premise: a commonsense reading of the ALJ's opinion demonstrates that he did not find Ryan's side effects to be disabling. Second, Ryan argues that the ALJ erred by failing to discuss the testimony of a third-party who corroborated those side effects. The Court agrees that the ALJ erred, but disagrees that the error warrants remand.

## I.    The ALJ's Analysis of Ryan's Fatigue

At the hearing, Ryan testified that his medication causes him to experience fatigue. (R. at 59.) The ALJ acknowledged this testimony but nonetheless concluded that Ryan is able to perform work at the medium exertional level. Ryan argues that the ALJ failed to bridge the "analytical gap" between Ryan's fatigue and his ability to perform medium work. (Pl. Br. 8–11.[2]) The Commissioner counters that the only evidence of Ryan's fatigue was his own testimony, that the ALJ weighed that

---

[2] "Pl. Br." refers to Ryan's opening brief, filed on October 17, 2025. (Doc. 10.)

7

testimony against the objective evidence, and that the ALJ reasonably concluded Ryan could perform medium work.[3] (Comm'r Br. 3–5.[4])

At the outset, the parties dispute whether the ALJ actually credited Ryan's testimony about his fatigue. Ryan says yes: the ALJ "found that [Ryan's] medication causes 'extreme fatigue with activity.'" (Pl. Br. 12 (quoting R. at 43).) The Commissioner responds that the ALJ's decision—read as a whole—demonstrates that he did not take Ryan's fatigue allegations at face value. (Comm'r Br. 3.) The Court agrees. An ALJ's opinion must be read in context and "as a whole." *Shirley W. v. Comm'r of Soc. Sec.*, No. 1:23-cv-1181, 2024 WL 2337666, at *3 (C.D. Ill. Apr. 25, 2024). And where possible, it must be given "a commonsensical reading rather than nitpick[ed]." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

To accept Ryan's reading of the ALJ's opinion would be to deviate from these principles. The ALJ acknowledged Ryan's testimony that he experiences fatigue, (R. at 41), but found that Ryan's testimony was "not entirely consistent with the medical evidence and other evidence in the record," (R. at 42; *see also* R. at 42 ("However, other evidence is inconsistent with [Ryan's] allegations of disabling symptoms.")).[5] That finding was largely based the ALJ's observation Ryan's daily activities—like household chores, preparing meals, and shopping—were "inconsistent with his allegations of functional limitations." (R. at 43.) It was also based on Ryan's

---

[3] As Ryan correctly observes, medium work as lifting fifty pounds occasionally and twenty pounds frequently. (Pl. Br. 9 (citing 20 C.F.R. 404.1567(c).)

[4] "Comm'r Br." refers to the Commissioner's response brief, filed December 8, 2025. (Doc. 10.)

[5] These statements refer to Ryan's testimony as a whole, rather than any specific allegation. But as the Commissioner observes, "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012.)

examination results showing that he was "alert and oriented," had "fair attention and concentration span," and "was able to focus." (R. at 42.) Evidently, then, the ALJ partially credited Ryan's allegations of fatigue but concluded that it does not prevent him from performing medium work. In fact, the ALJ imposed the medium-work limitation *because of* Ryan's allegations of fatigue. (R. at 43 (acknowledging that Ryan "testified his medication causes extreme fatigue with activity, which is consistent with limiting him to medium work"). In that way, ALJ credited Ryan's testimony only insofar as Ryan's fatigue prevents him from performing work more taxing than at the medium level.

Ryan's arguments rely on the premise that the ALJ adopted his testimony wholesale and found that Ryan suffers extreme fatigue with even minimal physical activity. For his part, it would be strange for the ALJ to simultaneously conclude *both* that minor levels of exertion cause extreme fatigue and that Ryan can perform medium work. But as discussed, the ALJ's opinion demonstrates that he did not completely embrace Ryan's allegations of fatigue. Nor, for that matter, is some fatigue ipso facto incompatible with medium work. In *Drea v. Barnhart*, for instance, the Seventh Circuit affirmed an ALJ who concluded that the claimant "could perform medium work despite his claims of disabling fatigue." 58 F. App'x 225, 229 (7th Cir. 2003). That was so, the court explained, despite the fact that the claimant had "complained to doctors about his fatigue . . . on three occasions." *Id.* Here, Ryan points to no evidence in the record that he consulted with doctors about his fatigue or otherwise sought treatment for it.

To be sure, disability adjudication must be conducted on a "case-by-case" basis. *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019). But Ryan offers no evidence that the ALJ supposedly overlooked in concluding that Ryan could perform medium work despite his allegations of fatigue. And as the Commissioner observes, the Social Security Act prohibits the award of benefits based on testimony alone. (Comm'r Br. 3 (quoting 42 U.S.C. § 423(d)(5)(A)).) Because Ryan's fatigue was based entirely on his own testimony, the ALJ was not required to accept it. And since the ALJ properly weighed those allegations against other portions of the record, his opinion was supported by substantial evidence. *See Warnell*, 97 F.4th 1050 at 1054 (explaining that ALJs need only provide enough reasoning to permit meaningful judicial review).

## II.    The ALJ's Discussion of the Third-Party Letter

In a similar vein, Ryan observes that a third party—Debbie—wrote a letter on his behalf that corroborated his allegations of fatigue. He argues that, although the ALJ acknowledged the letter, he failed to explicitly assign any particular weight to it. The Commissioner responds that the ALJ had no such obligation.

The Commissioner's argument overreads the relevant regulation. True, ALJs are "not required to articulate how [they] considered evidence from nonmedical sources using the requirements" that apply to medical sources. 20 C.F.R. § 1520c(d). And nonmedical sources include, for example, the claimant's spouse or parents. 20 C.F.R. § 1513(d)(4). For that reason, some courts have found no error where the ALJ gave only "short shrift" to the opinions of nonmedical sources. *Michael K. v. Saul*, No. 20-cv-2944, 2021 WL 1546426, at *7 (N.D. Ill. Apr. 20, 2021).

10

But relieving ALJs of a duty to apply the *same criteria* to nonmedical sources is not the same as relieving them of the duty to discuss those sources *altogether*. *See*. *Andrew L. v. Kijakazi*, No. 20 CV 1609, 2021 WL 5447035, at *4 (N.D. Ill. Nov. 22, 2021) ("Section 1520c requires at least minimal articulation of how nonmedical evidence was considered."). Here, the ALJ mentioned Debbie's letter in passing but otherwise did not explain the weight he assigned it. (R. at 41.) This was error, but it does not warrant reversal. Indeed, the letter in question is a one-page, handwritten note from a Debbie—a person whose relationship to Ryan was unspecified. (R. at 346.) It discusses the symptoms that Ryan experiences from his medical impairments— namely, hallucinations and feelings of paranoia. (R. at 346.) Then, in one sentence below the signature line, the note reads: "The ~~medica~~ medication he is on helps a lot but he stills [sic] has bouts with his symptoms and his medication makes him very tired and would be hard for him to work." (R. at 346.) Arguably, Debbie's statement that Ryan's medication prevents him from working is precisely the kind of ultimate issue that is reserved to the Commissioner and thus entitled to no weight. *See* 20 C.F.R. § 404.1520b(c).

In any event, the ALJ's failure to discuss this sentence in more detail was harmless because the Court is confident it would not change the result. *See Thomas H. v. Kijakazi*, No. 3:22-cv-50331, 2023 WL 6388145, at *2 (N.D. Ill. Sept. 29, 2023) (explaining that remand is inappropriate if the Court is confident that the result would be the same). The ALJ was clearly aware of Ryan's allegations about his fatigue and—as discussed above—partially credited them. But the ALJ largely discredited

11

those allegations based on Ryan's daily activities and objective medical findings. Because this letter provides no more insight into Ryan's symptoms than does his own testimony, it would not change the ALJ's conclusion.[6]

### CONCLUSION

IT IS THEREFORE ORDERED that the ALJ's decision is affirmed. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 2nd day of June 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge

---

[6] Ryan argues that the error was prejudicial because "the credibility determination directly impact[ed]" the RFC assessment here. (Pl. Br. 19.) Fair enough. But Ryan fails to explain why one sentence from a nonmedical source would have tipped the scale in his favor, especially in light of the abundance of countervailing evidence the ALJ considered in analyzing Ryan's allegations.